Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLEN CARPENTER,<br><br>               Plaintiff,<br><br>      vs.<br><br>DASEKE, INC., CHUCK SERIANNI, JONATHAN SHEPKO, BRIAN BONNER, ENA WILLIAMS, GRANT GARBERS, CATHARINE ELLINGSEN, MELENDY LOVETT, and BRUCE BLAISE.<br><br>               Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Allen Carpenter ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## <u>SUMMARY OF THE ACTION</u>

1.     Plaintiff brings this stockholder action against Daseke, Inc. ("Daseke" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to TFI International Inc., ("Parent") through merger vehicle Diocletian

MergerCo, Inc. ("Merger Sub"), collectively with Parent, ("TFI") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a December 28, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, TFI will acquire all of the remaining outstanding shares of Daseke's common stock at a price of $8.30 per share in cash (the "Merger Consideration"). The Company will survive the Merger as a subsidiary of Parent.

3.      Thereafter, on January 22, 2024, the Company filed its Preliminary Proxy Statement on Schedule 14A with the United States Securities and Exchange Commission (the "SEC").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: the Company took a lower price per share amount for its public stockholders to ensure Company insiders received favorable treatment.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement with the SEC in an effort to solicit public stockholders such as Plaintiff to vote his Daseke shares in favor of the Proposed Transaction.

6.      The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below,

the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Daseke, provided by the Company to the Company's financial advisors J.P. Morgan Securities LLC ("JP Morgan"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by JP Morgan, and provided to the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Tennessee and, at all times relevant hereto, has been a Daseke stockholder.

9.      Defendant Daseke provides transportation and logistics solutions in the United States, Canada, and Mexico. Daseke is incorporated under the laws of the State of Delaware and has its principal place of business at 15455 Dallas Parkway, Suite 550, Addison, TX 75001. Shares of Daseke common stock are traded on the NASDAQ Stock Exchange under the symbol "DSKE".

10.      Defendant Chuck Serianni ("Serianni") has been the Chairman of the Board of Directors of the Company at all relevant times.

11.      Defendant Jonathan Shepko ("Shepko") has been a director of the Company at all relevant times. Defendant Shepko also serves as the Chief Executive Officer ("CEO") of the Company.

12.      Defendant Brian Bonner ("Bonner") has been a director of the Company at all relevant times.

13. Defendant Ena Williams ("Williams") has been a director of the Company at all relevant times.

14. Defendant Grant Garbers ("Garbers") has been a director of the Company at all relevant times.

15. Defendant Catharine Ellingsen ("Ellingsen") has been a director of the Company at all relevant times.

16. Defendant Melendy Lovett ("Lovett") has been a director of the Company at all relevant times.

17. Defendant Bruce Blaise ("Blaise") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 10-17 are collectively referred to as the "Individual Defendants."

19. Non-Party Parent provides transportation and logistics services in the United States, Canada, and Mexico.

20. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

24.     Daseke provides transportation and logistics solutions in the United States, Canada, and Mexico. It operates through two segments, Flatbed Solutions and Specialized Solutions. The Company transports aircraft parts, manufacturing equipment, structural steel, pressure vessels, wind turbine blades, commercial glass, high security cargo, industrial and hazardous waste, arms, ammunition and explosives, lumber, and building and construction materials, as well as heavy machinery, such as construction, mining, and agriculture.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the November 9, 2023, press release announcing its 2023 Q3 financial results, the Company highlighted such milestones as: Maintained significant liquidity of $189 million, consisting of $77 million in cash balances and $112 million available under revolving credit facility, as of September 30, 2023, and Net cash

provided by operating activities improved to $34 million, compared to $28 million and $31 million in the second and first quarters of 2023, respectively.

26.     Speaking on these positive results, CEO Defendant Meury commented on the Company's positive financial results as follows, "Our team remains focused on improving operational performance and deploying the technology components necessary to further our One Daseke transformation. These initiatives are delivering real-time benefits, having already resulted in best-in-class 2019-trough to 2023-trough margin improvement of approximately 32% or 300 basis points."

27.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Daseke. Based upon these positive financial results and outlook, the Company is likely to have future success.

28.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Daseke to enter into the Proposed Transaction without providing requisite information to the Company's stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to TFI.

30.     The Preliminary Proxy Statement fails to adequately disclose whether the Company placed a per share value on Party D's offer to buy the Flatbed Perimeter portion of the Company for $455 million.

31.     The Preliminary Proxy Statement fails to disclose why a committee of independent board members was not created to run the sales process given the fact that the Company agreed to

accept a lower per share price in connection with TFI agreeing to a retention fund, putting Company executives at direct odds with Company's public stockholders; and thus, necessitating the formation of a committee of independent board members to facilitate the negotiation of the Proposed Transaction free and clear of all conflicts.

32.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and TFI and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     Moreover, the Preliminary Proxy Statement fails to adequately disclose any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

34.     Further, the Preliminary Proxy Statement fails to adequately disclose why the Company agreed to take cash out of the pockets of the public stockholders for the direct benefit of Company insiders when it lowered the sale price per share from $8.45 to $8.30 in order to enhance the retention pool amount, replace outstanding equity awards with comparable awards in TFI equity, and retain the severance for the Company executive team.

35.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

36.     On December 22, 2023, Daseke and TFI issued a joint press release announcing the

Proposed Transaction. The press release stated, in relevant part:

> Addison, Texas, Dec. 22, 2023 (GLOBE NEWSWIRE) -- Daseke, Inc. (NASDAQ: DSKE) (Daseke or the Company), the premier North American transportation solutions specialist dedicated to servicing challenging industrial end markets, today announced that, with the unanimous approval of Daseke's board of directors, it has entered into a definitive agreement to be acquired by TFI International Inc. (NYSE and TSX: TFII) (TFI International), a North American leader in the transportation and logistics industry, in an all-cash transaction that values Daseke at an enterprise value of approximately $1.1 billion.
>
> Subject to the terms of the agreement, Daseke common stockholders will receive $8.30 per share in cash, representing a premium of 69% to the last reported sale price on December 21, 2023 and a premium of 82% to the volume-weighted average price (VWAP) of the common stock for the 30 trading days ending on December 21, 2023.
>
> Jonathan Shepko, Chief Executive Officer of Daseke commented, "We believe this transaction to be a tremendous outcome for our Daseke shareholders, providing a near-term liquidity event at a significant premium, and is consistent with our stated priority of progressing opportunities that maximize value for our shareholders. TFI has a proven track record of successfully executing acquisitions that deliver value for its customers, shareholders, partners, and team members. We are very fortunate to be joining a like-minded organization who shares our commitment to strong customer relationships, services excellence, and utmost respect for our professional drivers, each of which has fueled Daseke's success over the last 15 years."
>
> The transaction is expected to close during the second quarter of 2024, subject to Daseke common stockholder approval, regulatory approvals and other customary closing conditions. Closing is not subject to any financing condition. Upon closing of the transaction, Daseke's common stock will no longer be listed on any stock exchange, and Daseke will operate its portfolio of brands as part of TFI International's Truckload segment.
>
> J.P. Morgan Securities LLC is serving as exclusive financial advisor to Daseke, and Kirkland & Ellis LLP is serving as Daseke's legal advisor.
>
> **About Daseke, Inc.**
>
> Daseke, Inc. is the premier North American transportation solutions specialist dedicated to servicing challenging industrial end-markets. Daseke offers comprehensive, best-in-class services to a diversified portfolio of many of North America's most respected industrial shippers.

***Potential Conflicts of Interest***

37.    The breakdown of the benefits of the deal indicates that Daseke insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Daseke.

38.    For example, Company insiders, currently own large illiquid blocks of Company stock all of which will be converted into the Merger Consideration not shared with public Company stockholder such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Number of Shares of Common Stock Beneficially Owned | Percent of Outstanding Common Stock[1] |
|---|---|---|
| **Directors and named executive officers:** | | |
| Bruce Blaise | 23,897 | * |
| Brian Bonner[2] | 539,131 | 1.1 |
| Catharine Ellingsen | 38,496 | * |
| Grant Garbers | 36,491 | * |
| Melendy Lovett | 39,585 | * |
| Charles "Chuck" F. Serianni | 81,326 | * |
| Jonathan Shepko[2][3] | 462,197 | * |
| Ena Williams | 83,326 | * |
| Aaron Coley | 100,342 | * |
| Soumit Roy[2][3] | 405,305 | * |
| Jason Bates[4] | 6,704 | * |
| Rick Williams[5] | 843,978 | 1.8 |
| **All directors and executive officers as a group (11 individuals)**[2][3] | 1,924,661 | 4.1 |
| **5% beneficial owners:** | | |
| Osterweis Capital Management, Inc.[6] | 4,347,850 | 9.2 |
| Lyons Capital, LLC[7] | 3,250,000 | 6.9 |
| Douglas Tabor[8] | 2,925,000 | 6.2 |

39.     In addition, Company insiders currently own company options, restricted stock units, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| | Shares Subject to In-the-Money Company Options (#)[1] | Value of In-the-Money Company Options ($) | Number of Unvested Company RSUs Held (#)[2] | Value of Unvested Company RSUs Held ($) | Number of Unvested Company PSUs Held (at Target Performance) (#)[3] | Value of Unvested Company PSUs Held (at Target Performance) ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| **Daseke Executive Officer** | | | | | | | |
| Jonathan Shepko | — $ | — | 258,609 | $ 2,146,455 | 361,628 | $ 3,001,512 | $ 5,147,967 |
| Aaron Coley | — | — | 167,738 | 1,392,225 | 78,096 | 648,197 | 2,040,422 |
| Scott Hoppe | — | — | 50,000 | 415,000 | 50,000 | 415,000 | 830,000 |
| Soumit Roy | 178,300 | 1,191,044 | 57,033 | 473,374 | 81,639 | 677,604 | 2,342,022 |

40.     In addition, employment agreements with certain Daseke executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

| Name | Cash ($)[1] | Equity ($)[2] | Other ($)[3] | Total ($) |
|---|---|---|---|---|
| Jonathan Shepko | 5,297,790 | 5,147,967 | 1,315,050 | 11,760,807 |
| Aaron Coley | 1,563,030 | 2,040,422 | 632,250 | 4,235,702 |
| Soumit Roy | 1,563,030 | 2,342,022 | 632,250 | 4,537,302 |

| Name | Multiple of Base Salary + Target Annual Bonus ($) | Prorated Target Annual Bonus ($) | COBRA Payments ($) | Total ($) |
|---|---|---|---|---|

| Name | | | | |
|---|---|---|---|---|
| Jonathan Shepko | 4,331,250 | 907,500 | 59,040 | 5,297,790 |
| Aaron Coley | 1,181,250 | 337,500 | 44,280 | 1,563,030 |
| Soumit Roy | 1,181,250 | 337,500 | 44,280 | 1,563,030 |

| Name | Value of In-the-Money Company Options ($) | Value of Unvested Company RSUs Held ($) | Value of Unvested Company PSUs Held (at Target Performance) ($) | Total ($) |
|---|---|---|---|---|
| Jonathan Shepko | — | 2,146,455 | 3,001,512 | 5,147,967 |
| Aaron Coley | — | 1,392,225 | 648,197 | 2,040,422 |
| Soumit Roy | 1,191,044 | 473,374 | 677,604 | 2,342,022 |

| Name | Retention Bonus ($) | Additional 2023 Annual Bonus Amount ($) | Total ($) |
|---|---|---|---|
| Jonathan Shepko | 825,000 | 490,050 | 1,315,050 |
| Aaron Coley | 450,000 | 182,250 | 632,250 |
| Soumit Roy | 450,000 | 182,250 | 632,250 |

41. The Preliminary Proxy Statement also fails to adequately disclose the totality of the communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

42. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43. Preliminary Proxy Statement fails to adequately disclose why the Company agreed to take cash out of the pockets of the public stockholders for the direct benefit of Company insiders

when it lowered the sale price per share from $8.45 to $8.30 in order to enhance the retention pool amount, replace outstanding equity awards with comparable awards in TFI equity, and retain the severance for the Company executive team.

44.     Thus, while the Proposed Transaction is not in the best interests of Daseke, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

45.     On January 22, 2024, the Daseke Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

46.     The Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

      a.   Whether the Company placed a per share value on Party D's offer to buy the Flatbed Perimeter portion of the Company for $455 million;

      b.   Why a committee of independent board members was not created to run the sales process given the fact that the Company agreed to accept a lower per share price in connection with TFI agreeing to a retention fund, putting Company executives at direct odds with Company's public stockholders; and thus,

necessitating the formation of a committee of independent board members to facilitate the negotiation of the Proposed Transaction free and clear of all conflicts;

c. Whether the confidentiality agreements entered into by the Company with TFI differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including TFI, would fall away;

e. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders; and

f. Why the Company agreed to take cash out of the pockets of the public stockholders for the direct benefit of Company insiders when it lowered the sale price per share from $8.45 to $8.30 in order to enhance the retention pool amount, replace outstanding equity awards with comparable awards in TFI equity, and retain the severance for the Company executive team.

47.     This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning

motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Daseke's Financial Projections*

48.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for Daseke provided by Daseke management to the Board and JP Morgan and relied upon by JP Morgan in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

49.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, JP Morgan reviewed, "certain internal financial analyses and forecasts prepared by the management of Daseke relating to its business."

50.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Daseke management provided to the Board and JP Morgan. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

51.     With regard to the *WholeCo Projections* provided by Daseke Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

   a.   Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same, including specifically: net income, depreciation and

amortization, interest, income taxes, and other material items that management believes do not reflect the Company's core operating performance, such as stock-based compensation, restructuring, impairment and severance;

b. Net Revenue, including all underlying inputs, metrics, and assumptions used to calculate same, including specifically: fuel surcharge; and

c. Net Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same.

52. With respect to the *RemainCo Projections* provided by Daseke Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a. Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same, including specifically: net income, depreciation and amortization, interest, income taxes, and other material items that management believes do not reflect the Company's core operating performance, such as stock-based compensation, restructuring, impairment and severance;

b. Net Revenue, including all underlying inputs, metrics, and assumptions used to calculate same, including specifically: fuel surcharge; and

c. Net Capital Expenditures, including all underlying inputs, metrics, and assumptions used to calculate same.

53. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

54. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

55.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of JP Morgan financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.   As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by JP Morgan*

56.     In the Preliminary Proxy Statement, JP Morgan describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

57.     With respect to *Public Trading Multiples Analysis,* the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific metrics for each corresponding publicly traded company; and

      b.   The specific inputs, assumptions, and metrics used to determine the FV/2024E Adj. EBITDA multiple reference range of 4.5x to 6.0x utilized;

58.     With respect to the *Selected Transactions Multiple Analysis,* the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific date on which each selected transaction was consummated;

      b.   The aggregate value of each selected transaction; and

    c.  The specific inputs, assumptions, and metrics used to determine the FV/LTM Adj. EBITDA multiple reference range of 4.5x to 6.0x utilized.

59.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific inputs, metrics, and assumptions used to determine the utilized perpetuity growth rates ranging from 1.25% to 1.75%;

    b.  The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 9.0% to 10.0%;

    c.  The specific inputs, metrics, and assumptions used to determine Daseke's weighted average cost of capital utilized;

    d.  The illustrative terminal values for Daseke, calculated; and

    e.  The number of fully-diluted outstanding shares of Daseke common stock as of December 13, 2023.

60.    With respect to the *Public Trading Multiples Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.  The specific inputs, metrics, and assumptions used to determine the diluted earnings per share ("EPS") for each of the corresponding publicly traded company;

    b.  Daseke's project EPS utilized; and

    c.  The specific inputs, metrics, and assumptions used to determine the utilized Price/2024E EPS multiple reference range of 16.5x to 32.0x applied to Daseke's projected EPS for the year ending December 31, 2024.

61.     With respect to the *Analyst Price Targets Analysis,* the Preliminary Proxy Statement fails to disclose the following:

        a.   The specific price targets analyzed; and

        b.   The specific Wall Street firms that generated the analyzed price targets.

62.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

63.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Daseke stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

64.     Plaintiff repeats all previous allegations as if set forth in full herein.

65.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

66.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities

exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

67.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

68.    The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

69.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

70.    The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

71.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

72.     Plaintiff repeats all previous allegations as if set forth in full herein.

73.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

74.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved,

and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

75.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Daseke's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

76.     The Individual Defendants acted as controlling persons of Daseke within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Daseke to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Daseke and all of its employees.  As alleged above, Daseke is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate

a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 1, 2024                          **BRODSKY & SMITH**

By: *Evan J. Smith*
                                Evan J. Smith
                                240 Mineola Boulevard
                                Mineola, NY  11501
                                Phone:  (516) 741-4977
                                Facsimile (561) 741-0626

                                *Counsel for Plaintiff*